UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
S.A.R.L. GALERIE ENRICO NAVARRA and   :
ENRICO NAVARRA,                       :
                                      :
                Plaintiffs,           :
        v.                            :        10 Civ. 7547 (KMW) (RLE)
                                      :
MARLBOROUGH GALLERY, INC.,            :        ORDER & OPINION
PHILIPPE KOUTOUZIS, and               :
PIERRE LEVAI,                         :
                                      :
                Defendants.           :
--------------------------------------------------------------X
KIMBA M. WOOD, U.S.D.J.:

On October 4, 2010, Plaintiffs S.A.R.L. Galerie Enrico Navarra (the "Navarra Gallery")

and Enrico Navarra ("Navarra") (collectively, "Plaintiffs") filed this action alleging that

Defendant Marlborough Gallery, Inc. ("Marlborough") had engaged in a campaign to unfairly

eliminate all competition and thereby achieve monopoly power over the ceramic artwork of Chu

The-Chun ("Chu").  On June 21, 2011, the Court dismissed the action.  *Navarra v. Marlborough*

*Gallery, Inc.*, 820 F. Supp. 2d 477, 488 (S.D.N.Y. 2011) (Jones, J.) [Dkt. No. 21].[1]

Plaintiffs have now filed an Amended Complaint ("AC") against Marlborough,

Marlborough's President, Pierre Levai ("Levai"), and Marlborough's Director for Asia, Philippe

Koutouzis ("Koutouzis") (collectively, "Defendants").  [Dkt. No. 30].  The AC asserts new

claims for tortious interference of contract and aiding and abetting tortious interference of

contract arising out of Plaintiffs' relationship with Chu.  Presently before the Court is Koutouzis'

motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and Marlborough and

Levai's motion for judgment on the pleadings pursuant to Rule 12(c).

For the reasons that follow, Defendants' motions are DENIED.

------------------------------------------
[1] This matter was originally assigned to the Honorable Barbara S. Jones.  On January 10, 2013, it
was transferred to the undersigned.  [Dkt. No. 56].

I.     **BACKGROUND**[2]

  A.  **The Production Agreement**

The Navarra Gallery is a Paris-based dealer of fine art operated by plaintiff Enrico

Navarra.  (AC ¶ 9).  The Navarra Gallery maintains galleries in Europe and the United States.

Since 1997, Plaintiffs have been working with Chu, a world renowned artist.  (*Id.* ¶¶ 17-19).  In

2003, the Navarra Gallery entered into a Production Agreement with Chu, under which Chu

agreed to design twenty-four ceramic plates (the "Plates" or a "Plate"), each with an original

painting.  (*Id.* ¶ 26).  Chu also agreed to execute a *bon-à-tirer* for each Plate, indicating that the

Plate could be reproduced and marketed to the public as a finished work bearing Chu's

imprimatur.  (*Id.* ¶¶ 26, 31).  The Production Agreement contained an Exclusivity Provision,

whereby Chu agreed "not to commence any additional editions of ceramics during 2004," and no

more than 20 editions during 2005 and 2006.  (*Id.* ¶ 26).

After Chu signed the *bon-à-tirer* for the final Plate, Plaintiffs began marketing and selling

the Plates.  They were exhibited throughout Europe and sold at various auctions, sometimes for

as much as 5,000 euros.  (*Id.* ¶¶ 35, 37-38).  Chu received substantial commissions from these

sales.  (*Id.* ¶¶ 34-35, 64).

  B.  **Defendants' Alleged Tortious Interference**

Defendants first began working with Chu around 2006, when they commissioned a series

of ceramic vases to be hand-painted by Chu (the "Vases" or a "Vase").  (AC ¶¶ 42, 61).

Defendants recognized, however, that the Exclusivity Provision in the Production Agreement

prohibited Chu from producing competing ceramic artwork through the end of 2006.  (*Id.* ¶¶ 26,

45).  Moreover, Defendants understood that the existence of the Plates—less expensive artwork

_____

[2] The Court assumes familiarity with its previous opinion and recounts only the relevant facts, which are taken as true for purposes of Defendants' motions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

than the Vases, and in the same medium—would surely decrease the price at which Defendants could sell the Vases. (*Id. ¶* 44).

Defendants took a number of steps to destroy Plaintiffs' goods, business, and reputation. First, on February 19, 2007, Chu's attorney, acting at Defendants' behest, sent Plaintiffs a cease-and-desist letter demanding the termination of the Production Agreement and cessation of sales. The letter caused Plaintiffs to refrain from selling the Plates and to postpone an exhibit in Bali. (*Id. ¶¶* 58, 72, 83). Second, on April 4, 2007, Defendants caused Chu's attorney to file a "frivolous lawsuit," ostensibly on Chu's behalf, making the same demands as those contained in the cease-and-desist letter. (*Id. ¶¶* 187, 71). Third, on May 16, 2008, Defendants, again through Chu's attorney, demanded that Christie's Hong Kong withdraw the Plates from an upcoming auction. (*Id. ¶¶* 81, 82). Finally, Defendants produced an advertisement in the *Journal des Arts* entitled "A Public Warning from Mr. Chu The-Chun," stating that the Plates were not genuine, and that was why the Christie's auction had been cancelled.

These steps caused the removal of Plaintiffs' Plates from the market, ultimately rendering them "unsalable." (*Id. ¶* 117). In January 2009, Chu suffered a stroke that prevented him from producing any further artwork. (*Id. ¶* 124). Defendants were then able to increase their asking price for the Vases by nearly 550%. (*Id. ¶* 126).

## C. Procedural History

On October 4, 2010, Plaintiffs filed their original Complaint alleging that Marlborough had engaged in a campaign to eliminate competition and achieve a monopoly over Chu's ceramic artwork. [Dkt. No. 1]. Marlborough filed a motion to dismiss pursuant to Rule 12(b)(6), [Dkt. No. 8], which the Court granted on June 21, 2011. *Navarra*, 820 F. Supp. 2d at 488.

On July 5, 2011, Plaintiffs moved, pursuant to Rules 15(a)(2) and 21, for leave to amend their Complaint, to add several claims, and to add two defendants.  [Dkt. No. 23].  Plaintiffs justified adding new Defendants Koutouzis and Levai by claiming that previously unavailable documents now established their involvement.  (Pls.' Mem. in Supp. of Mot. to Amend 21-22).

On April 4, 2012, the Court granted Plaintiffs' motion in part.  The Court permitted Plaintiffs to assert two new claims—tortious interference with the Production Agreement, and aiding and abetting this tortious interference—but rejected as futile any attempt to amend the previously dismissed claims.  [Dkt. No. 29].  The Court also granted Plaintiffs leave to add Koutouzis and Levai as defendants.  Two weeks later, Plaintiffs filed the AC, seeking to recover their initial investment and lost profits of approximately $15 million.  (AC ¶ 189).

Koutouzis now moves to dismiss, arguing that Plaintiffs' new claims are time barred.  [Dkt. No. 44].  Relying on Koutouzis' motion, Marlborough and Levai move for judgment on the pleadings pursuant to Rule 12(c).[3]  [Dkt. No. 48].

## II.    APPLICABLE LAW

Where a defendant has not yet answered a complaint, a court may consider a plaintiff's failure to comply with the statute of limitations at the motion to dismiss stage.  *See McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).  In deciding a motion to dismiss, the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in favor of the plaintiff.  *Id.*  Where a defendant has answered the complaint and asserted a limitations defense, the defendant may move for judgment on the pleadings on this ground.  *McKenna on Behalf of U.S. v. Senior Life Mgmt., Inc.*, 429 F. Supp. 2d 695, 696 (S.D.N.Y. 2006) (McMahon, J.).  In

---

[3] Marlborough and Levai's motion is made pursuant to Rule 12(c), rather than Rule 12(b)(6), because these Defendants have answered the AC.  [Dkt. No. 40].

adjudicating such a motion, courts employ the same standard as applicable to Rule 12(b)(6) dismissals. *Bank of N. Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010).

"A federal court sitting in diversity applies the forum state's statute of limitations." *Hughes v. Equity Office Props. Trust,* 245 F. App'x 88, 89 (2d Cir. 2007); *see also Diffley v. Allied-Signal, Inc.*, 921 F.2d 421, 423 (2d Cir. 1990) (same). Under New York law, the burden of proving that the statute of limitations has expired falls on the defendant. *See Romano v. Romano*, 227 N.E.2d 389, 391 (N.Y. 1967). It is the plaintiff's burden, however, to establish that an amended claim relates back to the date of the original complaint. *In re Alstom SA*, 406 F. Supp. 2d 402, 430 (S.D.N.Y. 2005) (Marrero, J.) (citing *Cornwell v. Robinson*, 23 F.3d 694, 705 (2d Cir. 1994)).

### III.    ANALYSIS

As discussed below, the Court finds that Plaintiffs' claims are timely because: (A) the relevant limitations period is three years, (B) the new claims relate back to the date of the original complaint, and (C) the new claims accrued less than three years before the filing of the original complaint.

#### A.  <u>The Relevant Limitations Period is Three Years</u>

The AC asserts new claims for tortious interference with contract and aiding and abetting tortious interference. In New York, the limitations period for tortious interference is three years. *See* N.Y. C.P.L.R. § 214(4); *Thome v. Alexander & Louisa Calder Found.*, 70 A.D.3d 88, 108 (N.Y. App. Div. 2009). Given that Plaintiffs' aiding and abetting claim is premised on the same factual allegations as the tortious interference claim, (*see* AC ¶ 193), the same limitations period

applies to both, *see Marketxt Holdings Corp. v. Engel & Reiman, P.C.*, 693 F. Supp. 2d 387, 393 (S.D.N.Y. 2010) (Kaplan, J.).[4]

**B.   The New Claims Relate Back to the Date of the Original Complaint**

Applying either federal or New York law,[5] the Court finds that the new claims relate back to the date of the original complaint—October 4, 2010.

*1. Federal Law*

Under Rule 15(c)(1)(C), a new claim against a new party will relate back if: (i) the new claim "arose out of the conduct, transaction, or occurrence set out . . . in the original pleading;" (ii) within the time for serving the original pleading, the new party "received such notice of the action that it will not be prejudiced in defending on the merits;" and (iii) within the time for serving the original pleading, the new party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C).  These requirements seek "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil

---

[4] Defendants argue cursorily that because Plaintiffs' allegations sound in reputational harm, the Court should apply the one year statute of limitations applicable to defamation. (Def.'s Mem. 6 n.2 (citing N.Y. C.P.L.R. § 215(3)).  The key inquiry in determining that a complaint sounds in tortious interference, rather than defamation, is whether "the gravamen of a complaint is economic injury, rather than merely reputational harm." *Amaranth LLC v. J.P. Morgan Chase & Co.*, 71 A.D.3d 40, 48 (N.Y. App. Div. 2009).  Where a complaint "allege[s] a specific business relationship," and not "merely [a] generalized reputational harm," the complaint "sounds in tortious interference." *Id.*; *see also Classic Appraisals Corp. v. DeSantis*, 159 A.D.2d 537, 537-38 (N.Y. App. Div. 1990) (same).  Plaintiffs here allege a longstanding business relationship with Chu. (AC ¶¶ 17-19, 26).  Defendants allegedly engaged in a course of conduct designed to undermine that relationship and to cause Chu to breach the Production Agreement, resulting in the loss of Plaintiffs' investment and future sales. (*Id.* ¶ 189).  Given these allegations, the Court concludes that the applicable statute of limitations is three years.

[5] "[F]ederal law applies to relation back issues in federal court diversity cases." *Lucchesi v. Experian Info. Solutions, Inc.*, 226 F.R.D. 172, 175 (S.D.N.Y. 2005) (Robinson, J.) (citing *Ingram v. Kumar*, 585 F.2d 566, 570 n.5 (2d Cir. 1978)).  Under Rule 15(c)(1)(A), however, when state law would permit relation back, such a finding applies equally in federal courts .  For this reason, courts typically apply whichever law is more generous. *Lieber v. Vill. of Spring Valley*, 40 F. Supp. 2d 525, 532 (S.D.N.Y. 1999) (Parker, J.).

Procedure . . . for resolving disputes on their merits." *Krupski v. Costa Crociere S. p. A.*, 130 S. Ct. 2485, 2494 (2010).

          i.  *Whether the New Claims Arose Out of the Conduct, Transaction, or Occurrence Set Out in the Original Complaint*

In determining whether a new claim "arose out of the conduct, transaction, or occurrence set out . . . in the original pleading," courts must determine whether the "basic claim" arose out of the conduct originally alleged. *Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006). The "'central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party . . . by the general fact situation alleged in the original pleading.'" *Id.* (quoting *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 86 (2d Cir. 1999)).

In this case, the factual situation alleged in the original complaint provided Defendants with clear notice of the matters raised in the amended pleading. Although the original complaint did not assert a tortious interference claim arising out of the Production Agreement, it did allege that Marlborough "demanded that the [Production] Agreement be terminated." *Navarra*, 820 F. Supp. 2d at 488. The original complaint also discussed the alleged acts of interference that form the basis for the amended claims—in particular, the February 2007 cease-and-desist letter, the April 2007 lawsuit, and Defendants' production of the Vases. (Compl. ¶¶ 31-32, 36-37, 39-40 [Dkt. No. 1]). The AC thus only amplifies the "general fact situation" asserted in the original complaint. *See Slayton*, 460 F.3d at 228; *compare In re Rationis Enterps., Inc. of Pan.*, 45 F. Supp. 2d 365, 367 (S.D.N.Y. 1999) (Owen, J.) (not permitting relation back where amended claims were based on a distinct contract not discussed in the original pleading).[6]

---

[6] The AC includes two new factual allegations: (1) that the Production Agreement contained an Exclusivity Provision, (AC ¶¶ 26, 45), and (2) that Chu breached the Exclusivity Provision in September 2008 when Defendants' Vases were unveiled at the Asia Pacific Contemporary Arts Fair, (*id.* ¶¶ 87, 90). These allegations are "amplif[ications of] the facts alleged in the original pleading." *Maccharulo v. Gould*, 643 F. Supp. 2d 587, 594 (S.D.N.Y. 2009) (Swain, J.). For example, although the original

Defendants contend that the amended claims are entirely new because they allege interference with the Production Agreement, (AC ¶¶ 185-90), whereas Plaintiffs' original claims alleged interference only with Plaintiffs Christie's Hong Kong contract, (Compl. ¶¶ 114-18). This lack of identity, however, is not decisive. Where, as here, an amended claim "is based on the same series of transactions and occurrences alleged in the original pleading," the claim will relate back "even where the revised pleading contains legal theories not included in the original." *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 128 F.3d 110, 116 (2d Cir. 1997); *see also Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 125 (2d Cir. 1994) (same).

### ii.   Whether the New Parties Received Timely Notice

Rule 15(c) requires Defendants Koutouzis and Levai to have received notice of the suit "within the period provided by Rule 4(m)" so that they "will not be prejudiced in defending the action on the merits." Fed. R. Civ. P. 15(c)(1)(C)(i). This requirement has two aspects: first, the notice must have been timely, and second, the notice must have been adequate to overcome any prejudice resulting from the delay in naming Defendants. *Sigmund v. Martinez*, No. 06 Civ. 1043, 2006 WL 2016263, at *5 (S.D.N.Y. July 10, 2006) (Dolinger, Mag.).

Defendants do not dispute that they received notice of the action. Soon after receiving the original complaint, Koutouzis was in contact with Marlborough's counsel regarding the action. (*See* Wallison Aff. Ex. A [Dkt. No. 52]).[7] Similarly, Marlborough and Levai appear to

---

complaint did not mention the Exclusivity Provision, it discussed the terms of the Production Agreement and the acts that allegedly breached the Exclusivity Provision. (*See* Compl. ¶ 20 (discussing Agreement); ¶¶ 31-32 (discussing commission, marketing, and sale of Vases)). Similarly, although the original pleading did not mention the Asia Pacific Fair, it discussed contemporaneous articles introducing the Vases. (*See id.* ¶ 48). Plaintiffs' amended and original claims thus "share a 'common core of operative facts.'" *Triano v. Town of Harrison, NY*, No. 09 Civ. 6319, 2012 WL 4474163, at *3 n.3 (S.D.N.Y. Sept. 26, 2012) (Karas, J.); *see also Hood v. City of New York*, 739 F. Supp. 196, 200 (S.D.N.Y. 1990) (Conner, J.) (new claim related back where amended allegations shared the same "factual core" as the original complaint).

[7] Defendants do not object to the Court's consideration of the Wallison Affidavit.

have been, at all relevant times, represented by the same attorneys. *See In re Integrated Res. Real Estate Ltd. P'ships Sec. Litig.*, 815 F. Supp. 620, 646 (S.D.N.Y. 1993) (Sweet, J.). The evidence of notice is further bolstered by the new Defendants' close relationship to the original Defendant, Marlborough—Koutouzis serves as Marlborough's Director of Asia, and Levai serves as its President. *Id.* at 645 ("In the Second Circuit, courts have generally held that Rule 15(c) is satisfied where the original party and added party have a close identity of interests." (quotations and alterations omitted)).

Defendants do not suggest that they have been prejudiced by the delay. This action remains at an early stage; only two Defendants have answered the complaint. Moreover, it appears that at least Defendant Koutouzis may have been involved in Marlborough's defense from an early stage. (*See* Wallison Aff. Ex. A).

Accordingly, the Court finds that Defendants received timely notice of the action such that they have not been prejudiced in defending the action on the merits.

iii. *Whether Plaintiffs' Failure to Name the New Defendants in the Original Complaint Constitutes a Mistake Concerning Identity*

Finally, Plaintiffs must show that, within the time for serving the original complaint, Koutouzis and Levai "knew or should have known that the action would have been brought against [them], but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii).

Defendants first contend that they lacked knowledge "that the suit would have been brought against [them]." *Id.* The Court finds it unreasonable for Koutouzis and Levai to believe that Plaintiffs made an informed and deliberate choice not to name them as defendants. Indeed, Defendants have offered no reason why Plaintiffs would sue Marlborough but not two of its most senior employees. *See In re Integrated Res.*, 815 F. Supp. at 646 ("[I]dentity of interests has . . .

9

served as touchstone for determining whether the new party knew or should have known that

'but for' a mistake in identity, he would have been sued in the first instance."). The natural

inference to draw is that Plaintiffs' "choice" was either unintentional or resulted from a lack of

knowledge regarding Defendants' misconduct. In either case, Defendants should have known

that the suit would have been brought against them.

Defendants next contend that Plaintiffs did not commit "a mistake concerning the proper

party's identity." Fed. R. Civ. Proc. 15(c)(1)(C)(ii). Plaintiffs explain that they failed to name

Koutouzis and Levai in the original complaint because the information regarding their

involvement only recently came to light. The Court finds that Plaintiffs' explanation qualifies as

a "mistake concerning the proper party's identity" under Rule 15(c)(1)(C)(ii).

The Supreme Court in *Krupski v. Costa Crociere, S.p.A.*, 130 S. Ct. 2485 (2010), recently

addressed the mistake element of Rule 15(c). There, the Supreme Court explained that, for

purposes of the mistake inquiry, "it would be error to conflate knowledge of a party's existence

with the absence of mistake." *Id.* at 2494. The Court further explained that "a plaintiff may

know generally what [a prospective defendant] does while misunderstanding the roles that [the

defendant] . . . played in the 'conduct, transaction, or occurrence' giving rise to her claim." *Id.*

Thus, even a deliberate choice can be mistake where the plaintiff "harbor[s] a misunderstanding

about [the defendant's] status or role in the events giving rise to the claim." *Id.*

Plaintiffs contend that their lack of knowledge regarding Koutouzis and Levai's conduct

qualifies as a mistake under *Krupski*. Prior to *Krupski*, the rule in the Second Circuit was that

"lack of knowledge does not constitute a 'mistake' for relation back purposes." *Hickey v. City of

New York*, No. 01 Civ. 6506, 2004 WL 736896, at *3 (S.D.N.Y. Apr. 5, 2004) (Maas, Mag.)

(citing *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir.), *modified*, 74 F.3d 1366

(2d Cir. 1996)).  The Court need not decide the precise contours of this standard in light of

*Krupski* for the purposes of resolving this motion.[8]  The Court agrees with other courts that have

held, in light of *Krupski*, that Rule 15(c) can be satisfied where the plaintiff "[lacked] knowledge

regarding the conduct or liability" of the newly added party.  *Abdell v. City of New York*, 759 F.

Supp. 2d 450, 457 (S.D.N.Y. 2010) (Sullivan, J.); *see also Roe v. Johnson*, No. 07 Civ. 2143,

2011 WL 8189861, at *4 (E.D.N.Y. Aug. 12, 2011) (citing *Abdell*).[9]  Indeed, the Supreme Court

mandated this result when it explained that a mistake under Rule 15 encompasses situations in

which the plaintiff has general knowledge regarding a prospective defendant's conduct, but

misunderstands that person's role "in the 'conduct, transaction, or occurrence' giving rise to [the]

claim."  *See* 130 S. Ct. at 2494.

 Accordingly, under Rule 15(c), the amended claims, even with respect to new

Defendants, relate back to the date of the original complaint.

### 2.  New York Law

 New York's relation back doctrine is similar to, and likely "more generous" than, its

federal counterpart.  *Pape v. Bd. of Educ. of the Wappingers Cent. Sch. Dist.*, No. 07 Civ. 8828,

2009 WL 3151200, at *15 (S.D.N.Y. Sept. 29, 2009) (Karas, J.).  Under New York law,

amendments relate back to timely filed pleadings when

 (1) both claims arose out of same conduct, transaction or occurrence,

---

[8] *See Askins v. City of New York*, No. 09 Civ. 10315, 2011 WL 1334838, at *1 n.3 (S.D.N.Y. Mar. 25, 2011) (Buchwald, J.) (noting *Krupski* has "engendered a split in the district courts as to whether *Barrow* remains good law").

[9] Defendants cite various cases which they claim establish that "the majority of courts addressing this issue have concluded that *Barrow* survived *Krupski*."  (Def. Koutouzis' Reply Mem. 9 (citing *Felmine v. City of New York*, No. 09 Civ. 3768, 2012 WL 1999863, at *3 (E.D.N.Y. June 4, 2012); *Rodriguez v. City of New York*, No. 10 Civ. 1849, 2011 WL 4344057, at *9 (S.D.N.Y. Sept. 7, 2011); *Dominguez v. City of New York*, No. 10 Civ. 2620, 2010 WL 3419677, at *3 (E.D.N.Y. Aug. 27, 2010)).  As noted above, however, the relevant question is not the general issue of whether *Barrow* survived *Krupski*, but the far more specific issue of whether a lack of knowledge regarding a defendant's conduct constitutes a mistake under Rule 15(c).  None of the cases cited by Defendants addresses this latter issue.

(2) the new party is united in interest with the original defendant, and by reason of
that relationship can be charged with such notice of the institution of the action
that he will not be prejudiced in maintaining its defense on the merits, and
(3) the new party knew or should have known that, but for a mistake by the
plaintiff as to the identity of the proper parties, the action would have been
brought against that party as well.

*Xavier v. RY Mgmt. Co., Inc.*, 45 A.D.3d 677, 678 (N.Y. App. Div. 2007); *see also Coupal v.*

*Buran*, 661 N.E.2d 978, 981 (N.Y. 1995).

The Court finds that each of these requirements is met.  First, the new claims arise out of

the "same conduct, transaction, or occurrence" as the original pleading.  *See supra* Part II.B.1.i

(discussing the same language under Rule 15).  Second, even absent actual notice, Koutouzis and

Levai, as high-ranking officers of Marlborough, are sufficiently "united in interest" with

Marlborough such that they can be charged with notice of the action and will not be prejudiced.

*See, e.g.*, *City of New York v. Lexington Ins. Co.*, 735 F. Supp. 2d 99, 112 (S.D.N.Y. 2010)

(Castel, J.) (holding that employees and employer are united in interest); *Amaya v. Garden City*

*Irrigation, Inc.*, 645 F. Supp. 2d 116, 122 (E.D.N.Y. 2009) ("The most frequently cited

relationship creating a unity of interest is vicarious liability, such as between an employer and

employee or a corporation and its agents.") (citing *Connell v. Hayden,* 83 A.D.2d 30, 46 (N.Y.

App. Div. 1981))).  Finally, the Court finds that Plaintiffs have established that their failure to

include Koutouzis and Levai in the original complaint was a mistake and not a deliberate choice.

*See supra* Part II.B.1.i (discussing *Krupski*); *see also Haidt v. Kurnath*, 86 A.D.3d 935, 936

(N.Y. App. Div. 2011) (finding mistake to satisfy standard for relation back when based on

plaintiff's lack of "sufficient knowledge of defendant's role" in the alleged conduct).

Accordingly, the amended claims against all Defendants also relate back to the original

complaint under New York Law.

### C.  The New Claims Accrued Less than Three Years Before the Original Complaint

Having concluded that the applicable statute of limitations is three years, and that the AC

relates back to the date of the original complaint (filed October 4, 2010), the final question

becomes whether Plaintiffs' new claims accrued before October 2007.

In New York, the statute of limitations begins to run when the cause of action accrues.

N.Y. C.P.L.R. § 203(a).  Under New York law,[10] a claim for tortious interference with contract

accrues when the plaintiff sustains damages from the breach of contract.  *See, e.g.*, *ESI, Inc. v.*

*Coastal Corp.*, 61 F. Supp. 2d 35, 77 (S.D.N.Y. 1999) (Conner, J.); *DT Corp. v. Morgan Stanley*

*Dean Witter & Co.*, 907 N.E.2d 268, 273 (N.Y. 2009).  Given that the Court has determined that

the new claims relate back to the date of the original complaint (October 4, 2010), these claims

will be time barred only if they accrued more than three years prior—before October 2007.

To make this showing, Defendants present two arguments.  First, they argue that the

claims accrued in February 2007, when Chu's attorney, at Defendants' behest, sent Plaintiffs a

cease-and-desist letter demanding that "the Production Agreement be terminated," that "all

further production, exhibition[,] and sale" of the Plates cease, and that Plaintiffs return all of the

Plates produced in 2006 and 2007, "including those currently exhibited or for sale but not

already sold."  (AC ¶¶ 58, 70).  Alternatively, Defendants contend that the claims accrued in

April 2007, when Chu's attorney, again at Defendants' behest, filed a lawsuit asserting many of

the same claims as the cease-and-desist letter.  (*Id.* ¶¶ 187, 71).  Defendants argue that these

---

[10] Plaintiffs briefly argue that "French law would presumably govern" whether and when the Production Agreement was breached.  (Pls.' Mem. in Opp'n 3 [Dkt. No. 51]).  Defendants contend that this assertion of French law comes too late.  (Def. Koutouzis' Reply Mem. 4 [Dkt. No. 53]).  Because the Court decides in Plaintiffs' favor under New York law, the Court does not address this dispute.  The Court notes, however, that although Federal Rule of Civil Procedure 44.1 requires a party raising an issue of foreign law to give notice, courts have held that "notice provided in the first submission by a party in connection with a motion will usually be adequate because the opposing party still has the opportunity to respond." *Torah Soft Ltd. v. Drosnin*, 224 F. Supp. 2d 704, 718 (S.D.N.Y. 2002) (Francis, Mag.).

actions amounted to breach by repudiation of the Production Agreement. (Def. Koutouzis'

Mem. 10). Defendants add that this repudiation caused damage because Plaintiffs refrained from

selling Plates and postponed an exhibit in Bali. (AC ¶¶ 72, 83; *see also* Def. Koutouzis' Mem.

17 n.7). At this stage, however, drawing all inferences in Plaintiffs' favor, the court cannot agree

that Plaintiffs' tortious interference claim accrued at either of these points.

First, it is not clear that either of these events amounted to a breach of the Production

Agreement. Under New York law, "[a] repudiation [of a contract] can be either 'a statement by

the obligor to the obligee indicating that the obligor will commit a breach that would of itself

give the obligee a claim for damages for total breach' or 'a voluntary affirmative act which

renders the obligor unable or apparently unable to perform without such a breach.'" *Norcon*

*Power Partners, L.P. v. Niagara Mohawk Power Corp.*, 705 N.E.2d 656, 659 (N.Y. 1998)

(quoting Restatement (Second) of Contracts § 250). Such repudiation occurs when the breaching

party's "word or deeds are unequivocal" and draw "a discernible line in the sand." *Id.* at 659;

*see also Palazzetti Import/Export, Inc. v. Morson*, No. 98 Civ. 722, 2001 WL 1568317, at *9

(S.D.N.Y. Dec.6, 2001) (Maas, Mag.) ("The renunciation . . . must rise to the level of a clear and

unqualified refusal to perform the entire contract.").

"Whether anticipatory repudiation has occurred is generally an issue of fact for the jury,"

and thus inappropriate to resolve on a motion to dismiss. *Briarwood Farms, Inc. v. Toll Bros.,*

*Inc.*, 452 F. App'x 59, 61 (2d Cir. 2011). An exception exists where "the purported repudiation

is in writing" and "there is no ambiguity as to the writing's meaning." *Id.* In this case, however,

the Court has not been presented with either the cease-and-desist letter or the filings in the

French lawsuit. The descriptions in the AC are insufficient for the Court to determine whether

Chu unequivocally repudiated his obligations under the Production Agreement.

Moreover, when confronted with Chu's purported repudiation, Plaintiffs had two mutually exclusive options: (1) "elect to treat the repudiation as an anticipatory breach and seek damages," or (2) "continue to treat the contract as valid and await the designated time for performance." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). The parties to the Production Agreement do not appear to have treated the cease-and-desist letter or the lawsuit as a breach. Third parties continued to sell Plaintiffs' Plates, (AC ¶ 72), and Chu did not object to these sales; in fact, he continued to cash the royalty checks sent by Plaintiffs. (*Id.* ¶ 73). Plaintiffs subsequently revived the Bali exhibit and even scheduled a separate auction of twelve Plates at Christie's Hong Kong. (*Id.* ¶ 74). These actions suggest a lack of breach (and thus non-accrual of Plaintiffs' claims) because "repudiation . . . followed by continued performance . . . amounts to a retraction of any repudiation." *Liebowitz v. Elsevier Sci. Ltd.*, 927 F. Supp. 688, 702 (S.D.N.Y. 1996) (Kaplan, J.).

Accordingly, at this stage, Defendants have not shown that Plaintiffs' tortious interference claim accrued before October 2007. Given that the applicable limitations period is three years and the amended claims relate back to the original complaint, the Court rejects Defendants' limitations defense.

## IV.    CONCLUSION

For the aforementioned reasons, Defendants' motions to dismiss and for judgment on the pleadings are DENIED. [Dkt. Nos. 44, 48].

SO ORDERED.

DATED:      New York, New York
            March 25, 2013

/s/_____
        KIMBA M. WOOD
   United States District Judge

15