UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
S.A.R.L. GALERIE ENRICO NAVARRA and   :
ENRICO NAVARRA,                       :
                                      :
                      Plaintiffs,     :
            v.                        :     10 Civ. 7547 (KMW) (RLE)
                                      :
MARLBOROUGH GALLERY, INC.,            :     OPINION & ORDER
PHILIPPE KOUTOUZIS, and               :
PIERRE LEVAI,                         :
                                      :
                      Defendants.     :
-----------------------------------------------------------------X
KIMBA M. WOOD, U.S.D.J.:

      On October 4, 2010, Plaintiffs S.A.R.L. Galerie Enrico Navarra (the "Navarra Gallery") and Enrico Navarra ("Navarra") (collectively, "Plaintiffs") filed their Original Complaint in this action, alleging that Defendant Marlborough Gallery, Inc. ("Marlborough") had engaged in a campaign to unfairly eliminate all competition and thereby achieve monopoly power over the ceramic artwork of Chu Teh-Chun ("Chu"). [Dkt. No. 1]. On June 21, 2011, the Court dismissed the action. Navarra v. Marlborough Gallery, Inc., 820 F. Supp. 2d 477, 489 (S.D.N.Y. 2011) (Jones, J.) [Dkt. No. 21].[1]

      Plaintiffs subsequently filed an Amended Complaint ("AC") against Marlborough, Marlborough's President, Pierre Levai ("Levai"), and Marlborough's Director for Asia, Philippe Koutouzis ("Koutouzis") (collectively, "Defendants"). [Dkt. No. 30]. The AC asserts new claims for tortious interference of contract and aiding and abetting tortious interference of contract arising out of Plaintiffs' relationship with Chu. In response, Defendant Koutouzis moved to dismiss the AC pursuant to Federal Rule of Civil Procedure 12(b)(6), and Defendants

---

[1] This matter was originally assigned to the Honorable Barbara S. Jones. On January 10, 2013, it was transferred to the undersigned. [Dkt. No. 56].

1

Marlborough and Levai moved for judgment on the pleadings pursuant to Rule 12(c). On March 26, 2013, the Court denied both motions (the "March 26 Opinion"). [Dkt. No. 57]. In relevant part, the Court determined that Defendants had not established their statute of limitations defense because the AC related back to the filing of the Original Complaint. Indeed, the Supreme Court mandated this result when it explained that a mistake under Federal Rule of Civil Procedure 15 ("Rule 15") encompasses situations in which the plaintiff has general knowledge regarding a prospective defendant's conduct, but misunderstands that person's role "in the 'conduct, transaction, or occurrence' giving rise to [the] claim." See S.A.R.L. Galerie Enrico Navarra v. Marlborough Gallery, Inc., No. 10 Civ. 7547, 2013 WL 1234937, at *6 (S.D.N.Y. Mar. 26, 2013) (Wood, J.) (citing Krupski v. Costa Crociere S. p. A., 130 S. Ct. 2485, 2494 (2010)).

Presently before the Court is Defendant Koutouzis's motion for reconsideration of the March 26 Opinion or, in the alternative, to amend the order to include permission for an interlocutory appeal under 28 U.S.C. § 1292(b). [Dkt. No. 60]. For the reasons that follow, the motion is DENIED.

## DISCUSSION

I.  **Motion for Reconsideration**

Pursuant to Southern District of New York Local Rule 6.3, a party may seek reconsideration of a determination of a motion within fourteen days of the Court's entry of its decision. Such a motion "is appropriate where 'the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" Medisim Ltd. v. BestMed LLC, No. 10 Civ. 2463, 2012 WL 1450420, at *1 (S.D.N.Y. Apr. 23, 2012) (Scheindlin, J.) (quoting In re BDC 56 LLC, 330 F.3d 111, 123 (2d Cir. 2003), abrogated on other grounds by In re Zarnel, 619

F.3d 156 (2d Cir. 2010)). "'The major grounds justifying reconsideration are an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Terra Sec. ASA Konkursbo v. Citigroup, Inc., 820 F. Supp. 2d 558, 560 (S.D.N.Y. 2011) (Marrero, J.) (quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)). "A motion for reconsideration is not an 'opportunity for making new arguments that could have been previously advanced,' nor is it a substitute for appeal." Medisim, 2012 WL 1450420, at *1 (quoting Associated Press v. U.S. Dep't of Defense, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005) (Rakoff, J.)). Motions for reconsideration are committed to the "sound discretion" of the district court. See Patterson v. United States, No. 04 Civ. 3170, 2006 WL 2067036, at *1 (S.D.N.Y. July 26, 2006) (Pauley, J.); see also Baker v. Dorfman, 239 F.3d 415, 427 (2d Cir. 2000).

Koutouzis presents two types of arguments in favor of reconsideration. First, he asserts that certain facts—some allegedly overlooked by the Court, some only recently discovered—demonstrate that Plaintiffs cannot meet their burden of establishing that the AC relates back to the Original Complaint. Second, he contends that the Court misinterpreted the proper relation back standard. The Court finds both of these arguments insufficient to warrant reconsideration.

### A. Factual Arguments

Koutouzis first notes that, in the Original Complaint, Plaintiffs describe him as "Marlborough's director of Asian Arts, and the man primarily responsible for the commissioning and marketing of the Marlborough-Commissioned Ceramics." [See Orig. Compl. 57]. Koutouzis also notes that Plaintiffs' memorandum in opposition to Defendants' motion to dismiss admitted that Plaintiffs knew that Koutouzis was "a Marlborough employee during the time of the relevant conduct, and believed that he was Marlborough's primary liaison with

3

[Chu]." [See Dkt. No. 51 at 13]. Koutouzis argues that these factual allegations, which the Court allegedly overlooked, "simply cannot be reconciled," [Dkt. No. 61 at 6], with the Court's conclusion that Plaintiffs "failed to name Koutouzis . . . in the original complaint because the information regarding [his] involvement only recently came to light," S.A.R.L., 2013 WL 1234937, at *5.

Next, Koutouzis relies on two letters to him from Plaintiff Enrico Navarra, dated January 19, 2010 and May 27, 2010, which discuss events relevant to this litigation (the "2010 letters"). (See Miodonka Decl. Exs. A & B [Dkt. No. 62]). Koutouzis contends that these "accusatory" letters undermine Plaintiffs' assertion that they were unaware of Koutouzis's involvement in the allegations underlying the claims set forth in the Original Complaint. [See Dkt. No. 61 at 7–8]. In response, Plaintiffs have submitted a declaration of Enrico Navarra discussing the letters and explaining his limited understanding of Koutouzis's role in the events surrounding this litigation. [Dkt. No. 68].

The Court finds that Koutouzis's factual arguments miss their mark for three reasons. First, although the allegations in the Original Complaint suggest that Plaintiffs knew of Koutouzis's existence, this hardly precludes finding a "mistake" sufficient for relation back purposes. See Krupski, 130 S. Ct. at 2494 ("For purposes of that inquiry, it would be error to conflate knowledge of a party's existence with the absence of mistake."). Second, the Supreme Court has explained that "Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint." Id. at 2493. Thus, to the extent that the factual allegations in the Original Complaint and the 2010 letters relate to *Plaintiffs*' knowledge, they are not dispositive of the relation back issue. See id. at 2493–94 ("Information in the

4

plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity."). Finally, the Parties' warring factual allegations based on the 2010 letters and Navarra's declaration in response are inappropriate to address in the first instance on reconsideration of a motion to dismiss.[2]

Of course, the Court's refusal to rely on the 2010 letters to reconsider Koutouzis's motion to dismiss does not preclude their use in future argument—at summary judgment or at trial, for instance. As the Court has noted, it is ultimately Plaintiffs' burden to establish relation back. See S.A.R.L., 2013 WL 1234937, at *3.

### B. Incorrect Legal Standard

Koutouzis next argues that the Court's March 26 Opinion misapplied the Supreme Court's decision in Krupski. "[A] motion for reconsideration is not one in which a party may reargue 'those issues already considered when a party does not like the way the original motion was resolved.'" Makas v. Orlando, No. 06 Civ. 14305, 2008 WL 2139131, at *1 (S.D.N.Y. May 19, 2008) (Batts, J.) (quoting In re Houbigant, Inc., 914 F. Supp. 997, 1001 (S.D.N.Y. 1996) (Sweet, J.)). Koutouzis's arguments largely recycle those put forth in his motion to dismiss and are, therefore, generally not appropriate for a motion for reconsideration.

Nevertheless, the Court rejects Koutouzis's arguments on their merits. First, Koutouzis argues that Rule 15(c) and Krupski should be limited to requests to replace, rather than add, a defendant, such as instances of misidentification. See, e.g., Krupski, 130 S.Ct. at 2490 (explaining that the plaintiff had originally named Costa Cruise Lines N. V. rather than Costa

---

[2] Koutouzis comes closer to the proper understanding of Krupski by arguing that, based on the 2010 letters, when he was not named in the Original Complaint, "it would have been entirely unreasonable for [him] to believe that Plaintiffs' failure to sue him was the result of 'a mistake concerning the proper party's identity.'" [Dkt. No. 69 at 7]. This may ultimately be true, but it is not a determination appropriate for this Court to make on reconsideration of a motion to dismiss.

Crociere S. p. A.).  The Court finds no support for this narrow reading of Rule 15(c).[3]  Krupski used broad language when explaining that "a plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the 'conduct, transaction, or occurrence' giving rise to her claim."  Krupski, 130 S. Ct. at 2494.  Moreover, Krupski discussed an earlier case, Nelson v. Adams USA, Inc., 529 U.S. 460 (2000), where the plaintiff sought to add a new defendant, Nelson, after obtaining an attorney's fee award against the corporation of which Nelson was the president.  130 S. Ct. at 2495–96.  Krupski explained that relation back was inapplicable in Nelson because the plaintiff "had originally been under no misimpression about the function Nelson played in the underlying dispute."  Id. (noting that the plaintiff sought to add Nelson "only after learning that the company would not be able to satisfy the judgment").  If Rule 15(c) were limited to mere misidentifications, as Koutouzis contends, Nelson would likely have rejected the plaintiff's attempt to add a defendant on that basis.  It did not, and Krupski's discussion of Nelson similarly did not suggest that Rule 15(c) is limited to mere misidentifications.

     Next, Koutouzis argues that the Court's interpretation of Krupski amounts to a "discovery rule" that would "undermine the statute of limitations in . . . an extraordinary fashion."  [Dkt. No. 69 at 8].  This argument is an exaggeration and misunderstanding of the Court's decision.  The Court did not hold that a plaintiff's discovery of a new, potentially liable party automatically establishes any sort of mistake.  As Krupski noted, the focus of the Rule

---

[3] "[M]any courts" are in accord and liberally construe Rule 15(c) to include "amendments simply adding or dropping parties, as well as amendments that actually substitute defendants … although some courts have adopted a narrower construction."  6A Charles Alan Wright et al., Federal Practice & Procedure § 1498.2 (3d ed. updated 2013) (arguing that, "[i]f both the basic transaction test and the notice requirement of Rule 15(c) are satisfied, there is no justification for a restrictive interpretation of the word 'changing' that would require a plaintiff to choose among defendants"); see e.g., Goodman v. Praxair, Inc., 494 F.3d 458, 469 (4th Cir. 2007) (stating that "we can discern no policy that would be served" by "forc[ing] the amending party to drop a defendant for each defendant he adds").

15(c)(1)(C)(ii) inquiry is on "what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint."[4] 130 S. Ct. at 2493.  The Court simply held that, where a plaintiff knew of a defendant's existence but allegedly only later became aware of the defendant's misconduct, the plaintiff could potentially establish a qualifying mistake.  Of course, the ultimate question remains whether the defendant "knew or should have known that, absent some mistake, the action would have been brought against him."  Id. at 2494.

## II. Defendant's Alternative Request

As an alternative, Koutouzis requests that the Court amend the March 26 Opinion to include a statement pursuant to 28 U.S.C. § 1292(b).  "Title 28 U.S.C. § 1292(b) provides that a district court may certify for immediate appellate review an otherwise unappealable order if the court is 'of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.'"  Liberty Synergistics Inc. v. Microflo Ltd., 718 F.3d 138, 146 n.8 (2d Cir. 2013) (quoting 28 U.S.C. § 1292(b)).  Section 1292(b) "is a rare exception to the final judgment rule that generally prohibits piecemeal appeals."  Koehler v. Bank of Bermuda Ltd., 101 F.3d 863, 865 (2d Cir. 1996).  "The question of law certified for interlocutory appeal must refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record."  Stone v. Patchett, No. 08

---

[4] Moreover, Rule 15(c) also requires that an amendment changing the parties named arise out of the "conduct, transaction, or occurrence set out … in the original pleading" and that a "party to be brought in by amendment" receive, within the 120 day Rule 4(m) period for serving the summons and complaint, "such notice of the action that it will not be prejudiced in defending on the merits." Fed. R. Civ. P. 15(c)(1)(C); see also Abdell v. City of New York, 759 F. Supp. 2d 450, 454–55 (S.D.N.Y. 2010) (Sullivan, J.) ("[T]he 'linchpin' of relation back doctrine is notice within the limitations period, so that the later-named party will not be prejudiced in defending the case on the merits." (quoting Velez v. Fogarty, No. 06 Civ. 13186, 2008 WL 5062601, at *5 (S.D.N.Y. Nov. 20, 2008) (Pitman, Mag.))).

Civ. 5171, 2009 WL 1544650, at *2 (S.D.N.Y. June 3, 2009) (Patterson, J.) (internal quotation marks omitted).  "Certification under section 1292(b) is to be granted sparingly." Narragansett Elec. Co. v. Am. Home Assur. Co., 921 F. Supp. 2d 166, 196 (S.D.N.Y. 2013) (Castel, J.).

Koutouzis contends that certification is appropriate in this case in light of the split of authority concerning whether Barrow v. Wethersfield Police Department, 66 F.3d 466 (2d Cir. 1995), modified, 74 F.3d 1366 (2d Cir. 1996), remains good law.  The Second Circuit in Barrow concluded that, for relation back purposes, "the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake" under Rule 15(c).  Id. at 470.  In that case, the plaintiff had listed ten "John Doe" defendants in his original complaint, only to later identify six of them by name in his amended complaint.  The Second Circuit concluded that identifying the defendants by name "did not correct a mistake in the original complaint, but instead supplied information [the plaintiff] lacked at the outset." Id.; see also Malesko v. Correctional Servs. Corp., 229 F.3d 374, 383 (2d Cir. 2000) ("A plaintiff is not considered to have made such a 'mistake,' however, if the plaintiff knew that he was required to name an individual as a defendant but did not do so because he did not know the individual's identity."), rev'd on other grounds, 534 U.S. 61 (2001).

As this Court's March 26 Order makes clear, however, the outcome of this case does not turn on whether Barrow remains good law.  See S.A.R.L., 2013 WL 1234937, at *6 n.9 ("[T]he relevant question is not the general issue of whether Barrow survived Krupski, but the far more specific issue of whether a lack of knowledge regarding a defendant's conduct constitutes a mistake under Rule 15(c).").  Barrow may still control the amendment and relation back of John Doe pleadings after Krupski, but that is not at issue in this case.  This case turns instead on Plaintiffs' alleged misunderstanding of Defendant's role "in the 'conduct, transaction, or

8

occurrence' giving rise to [their] claim," which Krupski explicitly stated is a "'mistake concerning the proper party's identity'" under Rule 15(c).  Krupski, 130 S. Ct. at 2494; see also Abdell, 759 F. Supp. 2d at 457 ("After Krupski, it is clear that a mistake 'concerning the proper party's identity' under Rule 15(c) includes lack of knowledge regarding the conduct or liability of that party.").  Koutouzis has not, therefore, raised a "controlling question of law" upon which an appeal might "materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).

## CONCLUSION

For the foregoing reasons, Defendant Koutouzis's motion for reconsideration of the March 26 Opinion or, in the alternative, to amend the order to include permission for an interlocutory appeal under 28 U.S.C. § 1292(b) is DENIED.  [Dkt. No. 60].

SO ORDERED.

DATED:	New York, New York
	October 18, 2013

/s/_____
KIMBA M. WOOD
United States District Judge