N.Y.S.D. Case # 10-cv-7547(KMW)

17-1477-cv
S.A.R.L. Galerie Enrico Navarra v. Marlborough Gallery Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of September, two thousand eighteen.

PRESENT:  ROBERT D. SACK,
          REENA RAGGI,
                              *Circuit Judges*,
          LEWIS A. KAPLAN,
                              *District Judge.*[*]

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Sep 21 2018
```

S.A.R.L. GALERIE ENRICO NAVARRA, ENRICO NAVARRA,

        *Plaintiffs-Appellants*,

v.

MARLBOROUGH GALLERY INC., PIERRE LEVAI,

        *Defendants-Appellees*,

PHILIPPE KOUTOUZIS,

        *Defendant*.

No. 17-1477-cv

---

[*] Judge Lewis A. Kaplan, of the United States District Court for the Southern District of New York, sitting by designation.

APPEARING FOR APPELLANTS:   JEREMY L. WALLISON, Wallison & Wallison LLP, New York, New York.

APPEARING FOR APPELLEES:   RICHARD E. ROSBERGER (Harry W. Lipman, Robert A. Freilich, *on the brief*), Rottenberg Lipman Rich, P.C., New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Kimba M. Wood, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on April 6, 2017, is VACATED and REMANDED.

Plaintiffs S.A.R.L. Galerie Enrico Navarra ("Navarra Gallery") and Enrico Navarra appeal from an award of summary judgment in favor of defendants Marlborough Gallery Inc. ("Marlborough") and one of its executives, Pierre Levai, on plaintiffs' claim for tortious interference with Navarra Gallery's 2003 contract with Chinese-born French artist Chu Teh-Chun ("Chu") for the production of a series of limited edition ceramic plates (the "Production Agreement").[1] Plaintiffs allege that defendants induced Chu to take various actions in 2007 and 2008, which culminated in Chu breaching the Production Agreement and publicly disputing the authenticity of plates exhibited and sold by plaintiffs. Plaintiffs here challenge the district court's determination that they failed to adduce evidence that defendants deliberately or intentionally induced Chu's breach. We review an award of summary judgment *de novo*, construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences and resolving all ambiguities in that party's favor, *see Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018), and we will affirm only

---

[1] Plaintiffs have withdrawn that portion of their appeal challenging the dismissal of their claim against another Marlborough agent, Philippe Koutouzis, as untimely.

2

if the record shows "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a); *see Garcia v. Hartford Police Dep't*, 706 F.3d 120, 126–27 (2d Cir. 2013). In applying that standard here, we assume the parties' familiarity with the facts and procedural history of this case, which we reference only as necessary to explain our decision to vacate and remand.

To prevail on a claim for tortious interference with contract under New York law, a plaintiff must show (1) "'the existence of a valid contract between the plaintiff and a third party,'" (2) "the 'defendant's knowledge of the contract,'" (3) "the 'defendant's intentional procurement of the third-party's breach of the contract without justification,'" (4) "'actual breach of the contract,'" and (5) "'damages resulting therefrom.'" *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401–02 (2d Cir. 2006) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424, 646 N.Y.S.2d 76, 82 (1996)). To satisfy the third element—upon which the district court resolved the motion below—the alleged interference "must be intentional, not merely negligent or incidental to some other, lawful, purpose." *Alvord & Swift v. Stewart M. Muller Const. Co.*, 46 N.Y.2d 276, 281, 413 N.Y.S.2d 309, 312 (1978); *see Reliance Ins. Co. v. Morris Assocs., P.C.*, 200 A.D.2d 728, 730, 607 N.Y.S.2d 106, 108 (2d Dep't 1994). On this element, as with any other, a non-movant must point to more than "mere speculation or conjecture as to the true nature of the facts" in order to survive summary judgment. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010). But where facts raising a question of intent are shown, "summary judgment is generally inappropriate," *Gelb v. Bd. of Elections of City of New York*, 224 F.3d 149, 157 (2d Cir. 2000), because "intent is always a subjective matter of inference," *ITC Ltd. v. Punchgini,*

3

*Inc.*, 482 F.3d 135, 150 (2d Cir. 2007) (internal quotation marks omitted) (noting issues of intent "rarely amenable to summary judgment").

Plaintiffs rely on four acts by Chu to demonstrate breach: (1) sending a cease and desist letter to Navarra Gallery on February 19, 2007, demanding termination of the Production Agreement and return of any plates in its possession (the "Cease and Desist Letter"); (2) commencing a lawsuit against Navarra Gallery in France on April 4, 2007, seeking the same relief (the "French Lawsuit"); (3) sending a May 16, 2008 email to Christie's Hong Kong auction house notifying it of the ongoing legal proceedings and raising concerns about the authenticity of plates scheduled for auction by Christie's that month (the "Christie's Email"); and (4) running an advertisement in *Le Journal des Arts* in October 2008 advising the art market of Chu's challenge to the plates' authenticity (the "Journal Ad"). Plaintiffs contend that these actions, particularly the Christie's Email and the Journal Ad, breached the Production Agreement by rendering the plates "unsalable," thereby depriving plaintiffs of their investment. App'x 86–87, 104. Defendants do not dispute that these events took place. Rather, they deny any involvement in Chu's actions and, thus, any intent to induce his breach.

Plaintiffs, however, adduced evidence admitting a contrary inference. For example, evidence showed that Marlborough hired Philippe Koutouzis as its Director for Asia to assist it in developing business relationships with new artists, "especially artists in China." *Id.* at 671. In 2005, Koutouzis met and developed a relationship with Chu, resulting in Marlborough hosting an exhibition of Chu's work in June 2006. At his deposition, Levai testified that "when [Marlborough] make[s] an effort to do an exhibition, [it] expect[s] . . . to be the [artist's] main distributor." *Id.* at 371. In November 2006, defendants expressed

4

interest in Chu's other works, including the ceramic plates. Around that time, Chu complained to Francis Delille—a signatory to the Production Agreement tasked with manufacturing the plates—about his remuneration under the agreement and began telling Delille he had a "client" to "buy the whole thing." *Id.* at 334–35.[2] Meanwhile, as Koutouzis later recounted in an internal email to Levai, Chu, in addition to speaking with him about the Production Agreement "many times," eventually showed him a copy, whereupon Koutouzis identified a "flaw" in the agreement and "referred Chu to [William] Bourdon," a lawyer and friend of Koutouzis. *Id.* at 385. Koutouzis further informed Levai that Bourdon determined plaintiffs "had not fulfilled [their] contractual obligations," such that Chu "should recover half if not all of the rights" in the ceramic plates. *Id.* The parties agree that Bourdon, on Chu's behalf, thereafter took all the alleged actions breaching the Production Agreement. Nevertheless, defendants deny that they referred Chu to Bourdon intending such actions or that they had any involvement in developing that strategy.

The record, however, contains circumstantial evidence that could allow a jury to find otherwise. For example, phone records from February 2007 through October 2008, obtained during discovery, show that not only did Koutouzis regularly communicate with Bourdon and Chu's son, Yvon, who "actively assisted his elderly father" and served as his

---

[2] Plaintiffs submit that it can be inferred that Marlborough was the client. Defendants, however, argue that the statements by Chu—who is now deceased—are inadmissible hearsay. While admissibility is ultimately an issue for the district court, on review of the record in the light most favorable to plaintiffs, there is a plausible basis to conclude that the statements may be admissible to show Chu's state of mind in committing the alleged breach, *i.e.*, his own belief that he had a new client for his plates. *See* Fed. R. Evid. 803(3); *see generally United States v. Best*, 219 F.3d 192 (2d Cir. 2000).

5

point of contact, *id.* at 196, 691–92,[3] but also that Koutouzis spoke by phone with *both* Bourdon and Yvon Chu within minutes of each other—and, at times, more than once each—on dates relevant to the alleged interference. Such communications occurred the day after receipt of plaintiffs' response to the Cease and Desist Letter; one day in the week preceding Bourdon's filing of Chu's French Lawsuit; the day before and the day on which Bourdon served plaintiffs with Chu's complaint; and the two days before the deadline to deliver the "technical elements" of Chu's Journal Ad, which Bourdon prepared, to the publisher.[4] Although defendants dispute the substance of these calls, arguing that their timing was "coincidental[]" and that they concerned "various issues unrelated to the Navarra dispute," Appellees Br. 33–34, 43, the pattern admits an inference that the calls concerned Bourdon's specific efforts to help Chu withdraw from the Production Agreement, and that defendants, through Koutouzis, knew of and supported those efforts. *See In re Dana Corp.*, 574 F.3d 129, 155–56 (2d Cir. 2009) (concluding jury could infer substance of phone calls from timing and pattern); *see also United States v. Anderson*, 747 F.3d 51, 72 (2d Cir. 2014) (observing, in criminal context, that jury could consider timing and pattern of phone calls in assessing intent).

Moreover, also during discovery, an unsigned draft of the Cease and Desist Letter was located in Marlborough's files. While defendants assert that the document could have come into their possession after transmittal, the fact that the letter contains minor differences from the final signed version supports an inference that it is an earlier draft

---

[3] Yvon Chu, for his part, denied at his deposition that he played any role in his father's business before 2009 or had any involvement in his father's legal affairs.

[4] In the week preceding the Christie's Email, Koutouzis travelled in China where he used pre-paid phone cards for which no records are available.

6

shared with defendants in advance of any communications to plaintiffs. Such a chronology would tend to undercut defendants' innocent explanation of Koutouzis's phone calls and support a further inference that defendants, through Koutouzis, knew and intended for the letter to be sent in order for Chu to escape the Production Agreement.

In sum, viewing the record as a whole and construing the evidence in the light most favorable to plaintiffs, *see Jaffer v. Hirji*, 887 F.3d at 114, we conclude that plaintiffs have offered evidence sufficient to raise a triable issue of fact as to defendants' intent to procure Chu's alleged breach.[5]

In urging otherwise, defendants argue the lack of evidence that they specifically intended for Chu to send the Christies' Email or to place the Journal Ad, the alleged breaches resulting in plaintiffs' claimed losses. *24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 429 F.3d 39 (2d Cir. 2005), relied on by defendants, does not require a showing of specific intent for each breaching action and, in fact, supports vacatur here. The *24/7 Records* plaintiff alleged tortious interference from the defendants' alleged inducement of a third party to cease distributing a specific song recording and to terminate its distribution agreement with the plaintiff. Concluding that only the latter conduct breached the agreement, we considered whether the plaintiff produced sufficient evidence that the defendants intentionally induced "*that* breach." *Id.* at 47 (emphasis in original). Based on evidence that the defendants contacted the third party to express displeasure with its distribution of the disputed song and to see "if there [was] a basis on which [the third party]

---

[5] We do not, however, ourselves decide whether plaintiffs are entitled to an adverse inference from Koutouzis's deletion of all his emails from the relevant period. We leave it to the district court on a proper motion to decide whether spoliation sanctions are warranted here. *See Chin v. Port Authority of N.Y. & N.J.*, 685 F.3d 135, 162 (2d Cir. 2012).

7

c[ould] withdraw it," we concluded that a jury reasonably could infer that the defendant "intentionally caused" the third party not only to cancel distribution of the song, but also to terminate the distribution agreement entirely. *Id.* (internal quotation marks omitted). Similarly, here, defendants' referral of Bourdon to Chu for the purpose of exploiting a "flaw" in the Production Agreement and recovering "half if not all of the rights" in the ceramic plates, App'x 385, together with the pattern of Koutouzis's calls with Bourdon and Yvon Chu at and about the time of the alleged breaching activities, would allow a reasonable jury to infer that defendants intended for Chu to breach the Production Agreement and aided and abetted his doing so.

Insofar as defendants dispute plaintiffs' proffered motive for these actions—specifically, the incongruity of defendants helping Chu destroy the value of the plates, notwithstanding their purported interest in acquiring the plates for their own distribution—and offer competing inferences for other record evidence, resolving these disputes is for the jury. *See Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010).

Finally, defendants urge alternative arguments for summary judgment not reached by the district court. *See* Appellees Br. 2–3, 47–72. Although we are empowered to affirm a district court's decision on any basis for which there is sufficient support in the record, *see Bruh v. Bessemer Venture Partners III L.P.*, 464 F.3d 202, 205 (2d Cir. 2006), "it is our distinctly preferred practice to remand" issues not addressed by the district court for its consideration in the first instance, *Schonfeld v. Hilliard*, 218 F.3d 164, 184 (2d Cir. 2000);

8

*accord Fulton v. Goord*, 591 F.3d 37, 45 (2d Cir. 2009). Accordingly, defendants may pursue these arguments on remand.[6]

We have considered plaintiffs' remaining arguments and conclude that they are without merit. For the reasons stated, we VACATE the judgment of the district court and REMAND for further proceedings consistent with this order. Because the district court's award of summary judgment as to plaintiffs' aiding and abetting claim depended on the analysis for which we identify error, the aiding and abetting claim will be restored to the district court. Moreover, while the district court appears to exercise supplemental jurisdiction over plaintiffs' state law claims, *see* 28 U.S.C. § 1367, it may choose on remand to review the basis for that jurisdiction and consider on the record whether its exercise best serves economy, convenience, fairness, and comity. *See In Touch Concepts, Inc. v. Cellco P'ship*, 788 F.3d 98, 101 (2d Cir. 2015); *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004).

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court



A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

---

[6] We further express no view on the parties' dispute as to whether Koutouzis was a Marlborough employee or an independent contractor or how resolution of that issue, if capable of determination as a matter of law, might inform a decision on summary judgment.